# STATE OF MICHIGAN

# COURT OF APPEALS

BOARD OF TRUSTEES OF THE CITY OF
PONTIAC POLICE & FIRE RETIREE
PREFUNDED GROUP HEALTH &
INSURANCE TRUST,

        Plaintiff-Appellant,

v

CITY OF PONTIAC,

        Defendant-Appellee.

FOR PUBLICATION
March 17, 2015
9:10 a.m.

No. 316680
Oakland Circuit Court
LC No. 2012-127682-CZ

Before: MARKEY, P.J., and OWENS and FORT HOOD, JJ.

PER CURIAM.

Plaintiff Board of Trustees of the City of Pontiac Police and Fire Retiree Prefunded Group Health and Insurance Plan (board of trustees or trustees) appeals by right Oakland Circuit Judge Shalina D. Kumar's order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(5) (lack of standing), (C)(8) (failure to state a claim), and (C)(10) (no genuine issue of material fact). We affirm.

## I. FACTS AND PROCEEDINGS

The Board of Trustees of the City of Pontiac Police and Fire Retirement System (retirement system trustees) and plaintiff trustees filed a complaint in circuit court asserting that defendant funded the City of Pontiac Police and Fire Retirement System, which provided retirement benefits to retired police and fire employees. Plaintiffs also asserted that defendant funded the City of Pontiac Police and Fire Retiree Prefunded Group Health and Insurance Plan (the trust), a tax-exempt voluntary employees' beneficiary association, 26 USC 501(c)(9), which provided health, optical, dental, and life-insurance benefits to police and fire employees who retired on or after August 22, 1996. The trust's board of trustees is comprised of five members:

-1-

the city's mayor, the city's finance director, and a firefighter, a police officer, and a fifth trustee who the other trustees would select and who could participate in the trust.[1]

During the fiscal year ending June 30, 2012, the city's emergency manager (EM), Louis Schimmel, entered into termination collective bargaining agreements (CBAs) with the various police and firefighter unions. The EM acted pursuant to the authority of § 19(1)(k) of 2011 PA 4, MCL 141.1519(1)(k).[2] The city also contracted to receive police services from Oakland County effective August 1, 2011, and fire services from Waterford Township, effective February 1, 2012. As of April 24, 2012, the CBAs outlining benefits funded by the trust included the Police Supervisors Contract Termination Agreement, the Police Non-Command Contract Termination Agreement, the Fire Contract Termination Agreement, the Police Supervisors Collective Bargaining Agreement, the Police Non-Command Collective Bargaining Agreement, and the Fire Collective Bargaining Agreement. On April 25, 2012, the city's EM issued Executive Orders 206 and 207, which modified the healthcare benefits set forth in the various CBAs. The executive orders were identical, with Executive Order 206 applying to fire retirees and Executive Order 207 applying to police retirees. Executive Orders 206 and 207 took effect on July 1, 2012, and modified retirees' healthcare benefits by requiring pre-Medicare-aged retirees to enroll in a Humana PPO-08 Plan, limiting Medicare-aged retirees to a Medicare Advantage Plan G, eliminating defendant's reimbursement of retirees' Medicare Part B premium, and requiring pre-Medicare-aged retirees to pay the amount above the "hard cap" of 2011 PA 152 or pay 20 percent of annual rates, whichever is greater.

On August 29, 2012, a stipulated order of the dismissal was entered as to the claim of the retirement system trustees because of Executive Order 224, which memorialized a settlement. On the same day, a stipulated order was entered authorizing plaintiff board of trustees[3] to file an amended complaint alleging that the city improperly reduced retiree healthcare benefits through Executive Orders 206 and 207. Count I alleged a violation of Const 1963, art 9, § 24; Count II alleged that through Executive Order 225 the city improperly sought to amend the trust by

---

[1] The pertinent provisions of the trust are set forth in the related case of *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Plan Trustees v City of Pontiac*, ___ Mich App ___; ___ NW2d ___ (Docket No. 316418, ___ __, 2015) (*Trustees I*), involving Executive Order 225 and the city's actuarially required contribution to the trust for the fiscal year ending June 30, 2012.

[2] 2011 PA 4 was "suspended" on August 8, 2012, by the State Board of Canvassers' certification of the sufficiency of the referendum petitions regarding the act filed on February 29, 2012. The State Board of Canvassers' certification on November 26, 2012, of the fall general election results disapproving 2011 PA 4 had the effect of repealing the act and reviving the Local Government Fiscal Responsibility Act, 1990 PA 72, MCL 141.1201 *et seq*. We decide in *Trustees I*, Part III (A), that the actions of the EM that were authorized by PA 4 remain valid after the suspension and repeal of that act.

[3] Hereafter, referred to as the singular plaintiff, board of trustees, or simply, the trustees.

eliminating its obligation to financially contribute to the trust,[4] and Count III alleged a breach of contract claim. Plaintiff sought a declaratory ruling, an injunction, and monetary damages.

On February 13, 2013, the city moved for summary disposition pursuant to MCR 2.116(C)(5), (C)(8), and (C)(10). In its supporting brief the city argued that plaintiff trustees lacked standing to sue for a certain level of healthcare benefits as it was not responsible for the level of retirees' healthcare benefits. Rather, the city argued, the board of trustees was only responsible for ensuring compliance with the Internal Revenue Code, managing and investing trust funds, and providing health, optical, dental, and life-insurance benefits to police and fire employees who retired on or after August 22, 1996, as required by the various CBAs. The city also argued that Count I was meritless because of our Supreme Court's holding in *Studier v Michigan Pub Sch Employees Retirement Bd*, 472 Mich 642; 698 NW2d 350 (2005), that healthcare benefits are not protected by Const 1963, art 9, § 24, and that Count III was meritless because the emergency manager had the authority under 2011 PA 4 to unilaterally modify collective bargaining agreements.

On May 22, 2013, the trial court entered its opinion and order granting defendant's motion for summary disposition. The trial court first concluded that the trustees had standing:

> Pursuant to the language of the Trust Agreement, Plaintiff is responsible for ensuring the Trust's compliance with the Internal Revenue Code, as well as investing, managing, and controlling the Trust's assets. In addition, Plaintiff has the "right and duty to enforce . . . the performance of all obligations provided in th[e] Trust." As Plaintiff is the entity responsible for the Trust's assets and required to enforce each obligation set forth in the Trust, Plaintiff has standing to bring the instant lawsuit.

The trial court then concluded that Count I was meritless because healthcare benefits are not protected by Const 1963, art 9, § 24. The trial court also concluded that Count III was meritless because the emergency manager validly amended the various CBAs pursuant to the authority granted by 2011 PA 4.

## II. STANDARD OF REVIEW

Although the trial court did not identify under which subrule it granted summary disposition, we review the trial court's decision under the standard applicable to MCR 2.116(C)(10) "because the trial court's consideration went beyond the parties' pleadings." *Kosmalski v St John's Lutheran Church*, 261 Mich App 56, 59; 680 NW2d 50 (2004). We review de novo a trial court's decision regarding a motion for summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of a claim. *Corley v Detroit Bd of Ed*, 470 Mich 274, 277-278; 681 NW2d 342 (2004). In deciding the motion, the trial court must view the substantively admissible evidence submitted up to the time of the motion in a light most

---

[4] On April 29, 2013, the parties stipulated to dismissal of plaintiff's claims to the extent they challenged Executive Order 225, which is the subject of *Trustees I*, *supra*.

favorable to the party opposing the motion. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). Summary disposition may be granted if there is no genuine issue of any material fact, and the moving party is entitled to judgment as a matter of law. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*.

## III. ANALYSIS

### A. STANDING

The city first argues that plaintiff board of trustees lacks standing to maintain the instant action. In particular, the city notes that the trustees have specific and limited duties under the trust agreement. The trust agreement limits the duties of the board of trustees to carrying out the purposes of the trust, maintaining the trust's tax exempt status under the Internal Revenue Code, and investing, managing, and controlling the trust's assets. While the purpose of the trust is to provide group insurance benefits for police and firefighter retirees, the nature and extent of those benefits is determined by the pertinent CBAs between the city and the various police and firefighter unions. The city also argues that nothing in the trust agreement establishes that the board of trustees has any role in determining the extent of the benefits accorded the retirees, and the trustees are expressly "bound by the terms of [the] Trust Agreement and any applicable Collective Bargaining Agreements between the City and the collective bargaining associations . . . ." Consequently, the city argues, the board of trustees has no more interest in the level of retiree health insurance benefits than any other citizen, and under the doctrine of standing, the board of trustees is not a proper party to assert the claims made in this lawsuit.

Initially, we must decide if the city's standing argument is properly before the Court. An appellee who has taken no cross appeal may nevertheless argue that a judgment in its favor be affirmed for reasons that were rejected by the lower court. *Middlebrooks v Wayne Co*, 446 Mich 151, 166 n 41; 521 NW2d 774 (1994). But the city did not raise the issue of standing in its answer to the original complaint or in its answer to the amended complaint. This Court has viewed a claim that a plaintiff lacks standing as a motion under MCR 2.116(C)(5), i.e., that the plaintiff lacks the legal capacity to sue. See *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 528; 695 NW2d 508 (2004). Further, to preserve a motion under subrule (C)(5), a party must raise the issue in its "first responsive pleading or in a motion filed prior to that pleading." *Id*., citing MCR 2.116(D)(2). Here, the city did not do so; it raised the issue in its motion for summary disposition that was filed after it had filed its answer to plaintiff's amended complaint. While the Court in *Glen Lake* found that the defendant in that case had waived the issue of standing by not timely raising it,[5] we conclude that in this case the issue has been properly preserved for our review.

---

[5] The Court also noted that the defendant "affirmatively acquiesced to [the] plaintiffs' right to sue by entering into a stipulation agreeing to the entry of a modified lake level order . . . ." *Glen*

MCR 2.116(D)(2) provides that a motion for summary disposition based in the "grounds listed in subrule (C)(5), (6), and (7) must be raised in a party's responsive pleading, unless the grounds are stated in a motion filed under this rule prior to the party's first responsive pleading." But the trial court has the discretion to allow such a motion even if it were not timely. "It is within the trial court's discretion to allow a motion filed under this subsection to be considered if the motion is filed after such period." MCR 2.116(D)(4). Here, the city raised the issue of standing in its motion for summary disposition; plaintiff responded to the issue, and the trial court ruled. Thus, under traditional rules of appellate preservation, the issue has been properly preserved. See *Gen Motors Corp v Dep't of Treas*, 290 Mich App 355, 386; 803 NW2d 698 (2010) (an issue is preserved for appellate review when it is raised before and decided by the trial court).

Additionally, the city essentially argues that the board of trustees is not the real party in interest, MCR 2.201(B), to assert claims of injury flowing from modification of the pertinent CBAs that determine retiree insurance benefits. Our Supreme Court has held that the defense that a plaintiff is not the real party in interest "is not the same as the legal-capacity-to-sue defense." *Leite v Dow Chemical Co*, 439 Mich 920, 478 NW2d 892 (1992). A motion for summary disposition asserting as its basis the doctrine of standing invokes a prudential doctrine that "focuses on whether a litigant 'is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable.'" *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010) (citation omitted). "A motion based on such a defense would be within MCR 2.116(C)(8) or MCR 2.116(C)(10), depending on the pleadings or other circumstances of the particular case." *Leite*, 439 Mich at 920. A motion for summary disposition based on subrule (C)(8) or (C)(10) "may be raised at any time." MCR 2.116(D)(4). Therefore, we conclude that the city timely raised the issues of standing and whether plaintiff is the real party in interest, so they are properly presented for our review.

The issue of standing presents a question of law that is reviewed de novo on appeal. *Barclae v Zarb*, 300 Mich App 455, 467; 834 NW2d 100 (2013). Likewise, the related issue of whether a plaintiff is the real party in interest is also a question of law that we review de novo. *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 354; 833 NW2d 384 (2013).

MCR 2.201(B) provides that "[a]n action must be prosecuted in the name of the real party in interest . . . ." The real party in interest is a party who is vested with a right of action in a given claim, although the beneficial interest may be with another. *In re Beatrice Rottenberg Living Trust*, 300 Mich App at 356; *Barclae*, 300 Mich App at 483. In general, standing requires a party to have a sufficient interest in the outcome of litigation to ensure vigorous advocacy and "in an individual or representative capacity some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy." *Bowie v Arder*, 441 Mich 23, 42; 490 NW2d 568 (1992) (citation omitted); see also *Lansing Sch Ed Ass'n*, 487 Mich at 355-356. Both the doctrine of standing and the included real-party-in-interest rule are prudential limitations on a litigant's ability to raise the legal rights of another. *Lansing Sch Ed Ass'n*, 487 Mich at 355-356; *In re Beatrice Rottenberg Living Trust*, 300 Mich App at 355.

*Lake*, 264 Mich App at 529. The Court, therefore, applied the rule: "A party cannot stipulate a matter and then argue on appeal that the resultant action was error." *Id*. (citation omitted).

Further, "a litigant has standing whenever there is a legal cause of action." *Lansing Sch Ed Ass'n*, 487 Mich at 372. But a plaintiff must assert his own legal rights and cannot rest his claim to relief on the rights or interests of third parties. *Barclae*, 300 Mich App at 483. The real party in interest is one who is vested with the right of action as to a particular claim, or stated otherwise, is the party who under the substantive law in question owns the claim asserted. *In re Beatrice Rottenberg Living Trust*, 300 Mich App at 356 (citations omitted).

First, we agree with the trial court that the board of trustees has standing to enforce the terms of the trust agreement. The trust agreement specifically accords the trustees "the right and duty to enforce payment of all contributions provided for in the Collective Bargaining Agreement and the performance of all obligations provided in this Trust." Art V, § 4. Also, the trustees "may compel and enforce payments of contributions, in any manner they deem proper." Art III, § 2. And, in general, the board of trustees has a duty to "enforce any claims of the trust . . . and to marshal and collect outstanding trust property." *In re Beatrice Rottenberg Living Trust*, 300 Mich App at 356. Thus, under the terms of the trust agreement, the trustees have a right of action to compel payment of contributions that are specified in the agreement. But this part of the lawsuit, which involves Executive Order 225, was dismissed. Plaintiff's remaining claims attempt to assert the right of third parties, police and firefighter retirees. The retirees' rights to assert lifetime, unchanging healthcare benefits must, if they exist, be based in contract. See, e.g., *M & G Polymers USA, LLC v Tacket*, ___ US ___; ___ S Ct ___; ___ L Ed 2d ___ (Docket No. 13-1010, January 26, 2015), 2015 WL 303218; see also *Allied Chemical & Alkali Workers of America v Pittsburgh Plate Glass Co*, 404 US 157, 181 n 20; 92 S Ct 383; 30 L Ed 2d 341 (1971). As the retirees' rights to healthcare benefits flow from the pertinent CBAs, they are governed by ordinary contract principles. *M & G Polymers*, 2015 WL 303218, *6.

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in *damages to the party claiming breach*." *Miller-Davis Co v Ahrens Const Co*, 495 Mich 161, 178; 848 NW2d 95 (2014) (emphasis added). Here, the board of trustees asserts no damages to itself as the governing corporate entity of the trust as a result of modifications to the CBAs that affect retiree benefits. Rather, the board attempts to assert the rights of the retirees. The board of trustees is neither a party to the CBAs, an assignee of a party to the contracts, or a third-party beneficiary of the CBAs. Simply stated, the board of trustees is not vested with, nor does the board own, a cause of action with respect to the city's alleged breach of contract regarding retiree benefits provided in the pertinent CBAs. Just as trust beneficiaries may not enforce rights owned by the trust, the trust through its board of trustees may not enforce contract rights of the beneficiaries who are determined outside the terms of the trust. See *In re Beatrice Rottenberg Living Trust*, 300 Mich App at 356-357 (holding that the beneficiary of a trust was not the real party in interest regarding rights owned by the trust). Consequently, the board of trustees is not the real party in interest to assert breach of contract claims regarding the CBAs. *Id*.; MCR 2.201(B). The board of trustees lacked standing because it was not the proper party to assert the breach of contract claims that the retirees might have regarding modification of the pertinent CBAs affecting the retirees' benefits. *Lansing Sch Ed Ass'n*, 487 Mich at 355-356.

The board of trustees presented two arguments below regarding standing that we find without merit. First, the board suggests it has standing under MCR 2.605 because it sought declaratory relief. See *Lansing Sch Ed Ass'n*, 487 Mich at 372 (holding "whenever a litigant

meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment"). MCR 2.605(A)(1) provides: "In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." The declaratory judgment rule, however, "incorporates the doctrines of standing, ripeness, and mootness." *UAW v Central Mich Univ Trustees,* 295 Mich App 486, 495; 815 NW2d 132 (2012). Also, the essential requirement of an action for declaratory relief is an "actual controversy." *Lansing Sch Ed Ass'n*, 487 Mich at 372 n 20. The Court explained in *Shavers v Attorney General*, 402 Mich 554, 688; 267 NW2d 72 (1978):

> The existence of an "actual controversy" is a condition precedent to invocation of declaratory relief. In general, "actual controversy" exists where a declaratory judgment or decree is *necessary to guide a plaintiff's future conduct in order to preserve his legal rights*. [Emphasis added; see also *Associated Builders & Contractors v Dir of Consumer & Indus Servs*, 472 Mich 117, 126; 693 NW2d 374 (2005), overruled in part on other grounds *Lansing Sch Ed Ass'n*, 487 Mich at 371 n 18.]

Here, there is no "actual controversy" between the board of trustees and the city vis-à-vis insurance benefits provided to police and firefighter retirees. The modifications to the CBAs affecting the retiree benefits do not affect the legal rights of the board of trustees or the trust itself. The board of trustees does not need guidance regarding its future conduct in administering the trust, and the board's legal rights are not jeopardized by any changes in the retirees' benefits resulting from modification of the pertinent CBAs. Consequently, there is no "actual controversy" between the board of trustees and the city, i.e., an adverse interest necessitating the sharpening of the issues. *Lansing Sch Ed Ass'n*, 487 Mich at 372 n 20, citing *Associated Builders & Contractors*, 472 Mich at 126, quoting *Shavers*, 402 Mich at 589. In short, plaintiff does not have standing under MCR 2.605 because the modified CBAs do not affect the trustees' legal rights.

The board of trustees also argued below that it had standing in this case because three of its members are also beneficiaries of the trust. This argument is without merit.

"It is not disputed that, under Michigan law, an organization has standing to advocate for the interests of its members if the members themselves have a sufficient interest." *Lansing Sch Ed Ass'n*, 487 Mich at 373 n 21, citing *Trout Unlimited, Muskegon-White River Chapter v White Cloud*, 195 Mich App 343, 348; 489 NW2d 188 (1992). In the cited case, the plaintiff was a "nonprofit corporation dedicated to preserving and improving cold-water fishing resources" that alleged that a dam was improperly rebuilt after being destroyed by heavy rains and resulting flooding. *Id*. at 345-346. The trial court ruled the plaintiff lacked standing. This Court opined that "[a] nonprofit corporation has standing to advocate interests of its members where the members themselves have a sufficient stake or have sufficiently adverse and real interests in the matter being litigated." *Id*. 348. This principle does not apply to the instant case because the board of trustees is not a nonprofit group comprised of members sharing a common interest or who assert through their group association a common injury. Rather, the board of trustees is a corporate body charged with the limited and specified duties to administer the trust assets in a fiduciary manner to provide benefits that are specified in the pertinent CBAs. The board of

trustees must act as a whole on the majority vote of its members.[6] The individual trustees do not necessarily share the same interests, nor may they as trustees, assert in the name of the board their own individual personal interests. See *In re Beatrice Rottenberg Living Trust*, 300 Mich App at 356-357. Consequently, the board of trustees does not gain standing because one or more of the individual trustees has a claim of injury in his individual capacity.

For all the foregoing reasons, we conclude that the board of trustees is not the real party in interest and does not have standing to assert claims regarding modifications of the CBAs affecting the nature and extent of police and firefighter retiree benefits. Because this Court will affirm a trial court's decision if it reaches the correct result, albiet for the wrong reason, *Burise v Pontiac*, 282 Mich App 646, 652 n 3; 766 NW2d 311 (2009), we affirm the trial court's grant of summary disposition to the extent that plaintiff claims that Executive Orders 206 and 207 improperly modified the pertinent CBAs regarding police and firefighter retiree benefits. But because we agree with the trial court that the board of trustees has standing to enforce the terms of the trust agreement itself, we briefly address the merits of plaintiff's claims.

## B. CONSTITUTIONAL CLAIM

Plaintiff alleges Executive Orders 206 and 207 violate Const 1963, art 9, § 24, which reads as follows:

> The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.
>
> Financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities.

"These two clauses unambiguously prohibit the state and its political subdivisions from diminishing or impairing 'accrued financial benefits,' and require them to fund 'accrued financial benefits' during the fiscal year for which corresponding services are rendered." *Studier*, 472 Mich at 649. But the Court also held that "health care benefits are not 'accrued financial benefits' and, thus, are not protected by Const 1963, art 9, § 24." *Id*. at 670.

Plaintiff trustees do not dispute the holding of *Studier*. Instead they argue that the instant case is distinguishable because Article II of the trust reads in relevant part: "The grantor intends the benefits provided by this Trust to be considered a benefit guaranteed by Article 9, Section 24 of the State of Michigan Constitution." Therefore, the trustees argue, the plain language of the trust elevates otherwise unprotected health-care benefits to the protection of Const 1963, art 9, § 24. While not clearly stated, it appears the trustees rely on the first clause of Const 1963, art 9, § 24.

---

[6] "All decisions shall be made by at least three (3) affirmative votes." Art IV, § 10.

The trial court correctly dismissed this claim. As explained by the Court in *Studier*, the threshold question regarding whether the terms of Const 1963, art 9, § 24 apply is whether "accrued financial benefits" are at issue. *Studier*, 472 Mich at 653-654. "Health care benefits, however, are not benefits of this sort." *Id*. at 654. The parties to a contract cannot elevate its provisions to the protection of a constitutional provision which plainly does not apply. *Id*. at 658-659. At best, this claim is one for breach of contract, not a constitutional violation. And, for the reasons already discussed above, and will be below, plaintiff's breach of contract claim fails.

## C. BREACH OF CONTRACT

Plaintiff's breach of contract argument has two prongs. First, plaintiff argues that Executive Orders 206 and 207 breached the trust instrument itself, which states that covered retirees will be provided health care benefits as stated in the various CBAs between the city and police and firefighter unions. Second, plaintiff argues that the last CBAs, the termination agreements, either explicitly provided for retiree health care benefits or incorporated the provisions of earlier CBAs regarding retiree benefits. Both of these arguments fail.

As plaintiff recognizes, the source of the retirees' benefits is not the trust agreement itself but rather the various CBAs that provide for certain benefits. See *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Plan Trustees v City of Pontiac*, ___ Mich App ___; ___ NW2d ___ (Docket No. 316418, ___ __, 2015) (*Trustees I*), Part III (D). And, as we have discussed, the trust agreement itself is unaffected by Executive Orders 206 and 207; consequently, modification of the retirees' benefits could not possibly result in a breach of the trust agreement itself. After complying with the conditions specified in 2011 PA 4, the emergency manager could "reject, modify, or terminate" one or more of the terms and conditions of an existing CBA, which in this case is the source of police and firefighter retiree health care benefits. MCL 141.1519(1)(k). *Trustees I, supra*. Even assuming that Executive Orders 206 and 207 affected the trust agreement, we note the new provisions of the orders operated prospectively only, becoming effective on July 1. 2012. So, there has been no breach of contract because there is no contention that the city breached the terms of the trust instrument with respect to providing benefits to the retirees. The allegation is only that collective bargaining agreements have been amended altering the nature and extent of retiree benefits under the CBAs. As we decided above, plaintiff lacks standing to assert a breach of contract with respect to the CBAs. Plaintiff's contract claims also fail.

We affirm. No taxable costs are awarded to either party, a public question being involved pursuant to MCR 7.219.

/s/ Jane E. Markey
/s/ Donald S. Owens
/s/ Karen M. Fort Hood