*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* GREGG BRYAN KNIGHT.

---

GREGG BRYAN KNIGHT,

        Petitioner-Appellee,

v

PEOPLE OF THE STATE OF MICHIGAN,

        Respondent-Appellant.

FOR PUBLICATION
September 17, 2020
9:20 a.m.

No. 346554
Jackson Circuit Court
Family Division
LC No. 18-002119-CZ

---

Before: BOONSTRA, P.J., and TUKEL and LETICA, JJ.

TUKEL, J.

Respondent appeals as of right the November 20, 2018 order reinstating petitioner's gun rights, which were lost as a result of petitioner's 2001 plea-based conviction of arson of woods and prairies, MCL 750.78, then a four-year felony.[1] Respondent argues that in restoring petitioner's gun rights, the trial court erred because petitioner violated his probation, failed to pay restitution while on parole, and failed to pay court ordered restitution and attorney fees. Petitioner disagrees and additionally argues that this Court does not have jurisdiction over this case because respondent does not have standing and is not an aggrieved party. We hold that respondent does have standing; on the merits, we reverse and remand for the trial court to enter an order denying the petition because petitioner has not carried his burden.

## I. UNDERLYING FACTS

In May 2001, petitioner pleaded guilty as noted. Petitioner was sentenced to probation and ordered to pay $8,025 in restitution and $375 in attorney fees. Petitioner twice violated the conditions of his probation, and as a result the trial court, in May 2004, sentenced him to

---

[1] Following the enactment of 2012 PA 532, effective April 3, 2013, this offense is now classified as fourth-degree arson and is punishable as a five-year felony. MCL 750.75(1)(b).

imprisonment for 17 to 48 months for a probation violation. Petitioner later was paroled on the 17 to 48-month sentence, with a condition that he pay restitution. Petitioner failed to pay the entirety of his restitution, but nevertheless was discharged from parole in October 2007. As of January 23, 2019, petitioner had paid only $138.51 in restitution and $60.81 in attorney fees.

In August 2018, petitioner filed a petition to restore his gun rights. See MCL 28.424(1). Petitioner stated in the petition that he had completed probation and parole and that he had paid all fines arising from his arson conviction. Respondent answered the petition in October 2018 and argued that petitioner's gun rights should not be restored because petitioner had not paid all of his fines, leading to his probation being violated and his imprisonment for those violations.

The trial court held a motion hearing in October 2018. In November 2018, the trial court entered an order restoring petitioner's gun rights. This appeal followed.

## II. RESPONDENT'S STANDING

On appeal, petitioner argues for the first time that respondent lacks standing in this case. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

"To preserve for appellate review an issue regarding standing, the defendant must have raised the issue in his or her first responsive pleading or motion." *In re Gerald L Pollack Trust*, 309 Mich App 125, 153; 867 NW2d 884 (2015). When, as here, a party raises the issue of standing for the first time on appeal, the issue is unpreserved. *Id.*[2]

When properly preserved, this Court reviews the issue of whether a party has standing de novo. *Id.* "Likewise, the related issue of whether a plaintiff is the real party in interest is also a question of law that we review de novo." *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v Pontiac No 2*, 309 Mich App 611, 621; 873 NW2d 783 (2015). Unpreserved issues, however, are reviewed for plain error. *Hogg v Four Lakes Ass'n, Inc*, 307 Mich App 402, 406; 861 NW2d 341 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Kern v Blethen-Coluni*, 240 Mich App 333, 335-336; 612 NW2d 838 (2000) (quotation marks omitted), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "[A]n error affects substantial rights if it caused prejudice,

---

[2] In this case, the issue of standing implicates more than who may file a brief or present argument to a court. The filing of a claim of appeal or the granting of an application to appeal is a prerequisite to our having jurisdiction. See MCR 7.203(A) and 7.203(B). Thus, if respondent lacked standing, this appeal would not lie because there would be no party to appeal. Therefore, if petitioner is correct that a prosecuting attorney lacks standing in firearms rights restoration cases, a trial court's ruling ordering firearms rights restored would in all instances be effectively unreviewable, because there never would be a party who could pursue an appeal. Under respondent's view, however, a petitioner could in all cases appeal the denial of a petition, as MCL 28.424(1) undisputedly confers standing on petitioners.

i.e., it affected the outcome of the proceedings." *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 443; 906 NW2d 482 (2017) (alteration in original, citation and quotation marks omitted). The appellant bears the burden of persuasion with respect to prejudice. See *Carines*, 460 Mich at 763 ("It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.") (quotation marks and citation omitted).

## B. ANALYSIS

At the trial court level "a litigant has standing whenever there is a legal cause of action." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010) (*LSEA*). But even if no legal cause of action is available to a litigant, "[a] litigant may have standing . . . if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant." *Id*.

> In general, standing requires a party to have a sufficient interest in the outcome of litigation to ensure vigorous advocacy and in an individual or representative capacity some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy. [*Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v Pontiac No 2*, 309 Mich App 611, 621; 873 NW2d 783 (2015) (citation and quotation marks omitted).]

To have standing on appeal, however, a litigant must be an aggrieved party under MCR 7.203(A). *MCNA Ins Co v Dep't of Technology, Mgt & Budget*, 326 Mich App 740, 745; 929 NW2d 817 (2019); MCR 7.203(A). To be an aggrieved party, a litigant must have "suffered a concrete and particularized injury . . . arising from either the actions of the trial court or the appellate court judgment." *MCNA*, 326 Mich App at 740 (citation omitted). For a party to be aggrieved, the injury must be concrete, "and not a mere possibility arising from some unknown and future contingency." *Id*. (citation and quotation marks omitted).

Petitioner argues that respondent does not have standing because it lacks an interest in whether petitioner's gun rights are restored. Specifically, petitioner argues that MCL 28.424 does not identify respondent as an "interested party" and that this omission establishes that respondent thus is not an interested party. Petitioner is correct that county prosecutors are not even referenced in the firearms rights restoration statute, MCL 28.424. But standing does not require that a statute identify a litigant as an interested party. *LSEA*, 487 Mich at 372. Standing does require that a litigant have an interest in the outcome of the litigation, but such interest need not be enshrined in statute. See *id*.

Petitioner additionally argues that respondent does not have standing because under a prior version of MCL 28.424, the county prosecutor, as a member of the concealed weapons licensing board, had a role in determining whether to restore a petitioner's gun rights.[3] Petitioner argues

---

[3] The county sheriff and the director of the department of state police also were members of the concealed weapons licensing board. MCL 28.425a as amended by 2000 PA 381.

that when the Legislature transferred this power to the circuit courts, effective December 1, 2015, its action established that prosecutors did not have an interest in whether a petitioner's gun rights were restored.[4]

Although the Legislature abolished concealed weapons licensing boards and instead reposed the power to restore gun rights solely in the circuit courts, this change alone does not establish that respondent lacks standing in this case. Notwithstanding the Legislature's changes to MCL 28.424 and 28.425a, respondent still has an interest in this case. Under MCL 49.153 "[t]he prosecuting attorneys shall, in their respective counties, appear for the state or county, and prosecute or defend in all the courts of the county, all prosecutions, suits, applications and motions whether civil or criminal, in which the state or county may be a party or interested." In construing a statute, "[i]t is a well-known principle that the Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws." *Walen v Dept of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993). Nothing in the firearms rights restoration statutes suggests that MCL 49.153 is not to be applied to such proceedings, or more generally that prosecuting attorneys shall have no role to play in those proceedings notwithstanding the facial applicability of MCL 49.153.[5]

Moreover, to read the firearms rights restoration statutes in the manner in which petitioner suggests would work a very significant change in the procedure by which such cases are generally heard and decided. "Under our adversarial system, each party bears the responsibility for ensuring that its positions are vigorously and properly advocated," and " 'parties frame the issues and arguments' for the trial court." *Barnard Manufacturing Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 382–83; 775 NW2d 618 (2009) (citations omitted). The United States Supreme Court has very recently reaffirmed this point. In *United States v. Sineneng-Smith*, ___ US __, ___; ___ S CT ___; ___ L Ed 2d ___ (2020) (Docket No. 19-67), the Court unanimously stated that "[i]n our adversarial system of adjudication, we follow the principle of party

---

[4] Before December 1, 2015, the concealed weapons licensing board, of which the county prosecutor was a member, determined whether to restore a petitioner's gun rights. See MCL 28.424, as amended by 1992 PA 219; MCL 28.425 as amended by 2000 PA 381. Effective December 1, 2015, however, concealed weapons licensing boards were abolished and the county clerk became responsible for many of the duties previously held by the concealed weapons licensing board. MCL 28.425a as amended by 2015 PA 3. But the power to determine whether to restore a petitioner's gun rights was given to the circuit courts, not the county clerk. MCL 28.424 as amended by 2014 PA 6. That power remains with circuit courts today. MCL 28.424.

[5] MCL 49.153 does not specify the mechanism by which a prosecuting attorney shall "appear" in such proceedings, or how it mechanically then becomes a party or a litigant with standing. We would invite the Legislature to provide clarity in that regard. We do note, for purposes of this appeal, that MCR 2.209(A)(1) provides that a person has a right to intervene in any action "when a Michigan statute or court rule confers an unconditional right to intervene." And although that right exists "[o]n timely application," the prosecution has represented to this Court that the trial court in this case expressly invited it to appear. We therefore deem any requirement of an "application" to intervene to have been satisfied in this case.

-4-

presentation[,]" which means that " 'in both civil and criminal cases, in the first instance and on appeal . . ., we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.' " *Id*. at *3, citing *Greenlaw v. United States*, 554 US 237; 128 S Ct 2559; 171 L Ed 2d 399 (2008). As such, "our system 'is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.' " *Id*. (alteration in original), citing *Castro v. United States*, 540 U S 375, 381-383; 124 S Ct 786; 157 L Ed 2d 778 (2003) (Scalia, J., concurring in part and concurring in judgment) (brackets omitted). Consequently, courts "do not, or should not, sally forth each day looking for wrongs to right. They wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties.' " *Id*. (citation and brackets omitted).

Petitioner's reading of the statute would do away with the adversarial aspect of gun rights restoration proceedings because there would be no one to argue in opposition to restoration of a petitioner's rights. A trial court would have to function both as an advocate and as an adjudicator.[6] Among other things, this would require a trial court, with input only from a petitioner, to ferret out whether a petitioner's "record and reputation are such that the individual is not likely to act in a manner dangerous to the safety of other individuals." MCL 28.424(4)(c); see also Section III of this opinion. Trial courts generally are poorly equipped to conduct such fact-finding on their own, without arguments and with the development of facts in support of only one side of such a motion.

In addition, under petitioner's reading, there would be no aggrieved party with standing to appeal a trial court ruling restoring firearms rights, and thus such decisions would be effectively unreviewable. See n 2 of this opinion. This result would fly in the face of *Sineneng-Smith*, under which a court abuses its discretion if it departs too drastically from the principle of party presentation. *Sineneng-Smith,* at 3. Applying that reasoning, the Court in *Sineneng-Smith* remanded the case for an adjudication of the appeal "attuned to the case shaped by the parties rather than the case designed by the appeals panel." *Id*.

Given the strong presumption that proceedings will generally take place in an adversarial system, and given that MCL 49.153 facially applies to prosecuting attorneys being involved in firearms rights restoration cases, as such cases involve civil "applications and motions" in which the state is "an interested party," we find nothing in the statutory language which would support reading the statute to so radically depart from the ordinary and expected functioning of adversarial proceedings. In the absence of a clear statutory statement of such a purpose, we cannot find that the Legislature intended such a result.

The United States Supreme Court has said, in a different context involving notice of what the law entails, "If [the Legislature] desires to go further, it must speak more clearly than it has." *McNally v United States*, 483 US 350, 360; 107 S Ct 2875; 97 L Ed 2d 292 (1987); see also *Skilling v United States*, 561 US 358; 130 S Ct 2896, 2906; 177 L Ed 2d 619 (2010) (citing *McNally* and stating "absent [the Legislature's] clear instruction otherwise[,] '[i]f [the Legislature] desires to go

---

[6] As noted, the statute assigns to "circuit courts" the sole authority to determine firearms rights restoration. MCL 28.424(1).

further,' the Court reiterates, 'it must speak more clearly than it has.' "). We hold that the same requirement of clarity applies here.

Furthermore, respondent is an interested party in this case because a trial court's decision to restore a petitioner's gun rights obviously directly affects a petitioner's right to possess firearms.[7] If a trial court denies the petition, then petitioner's possession of a firearm would violate MCL 750.224f. See MCL 28.424; MCL 750.224f (prohibiting possession of a firearm by a felon). In contrast, if a trial court grants the petition, petitioner could lawfully possess a firearm. See MCL 28.424; MCL 750.224f. County prosecutors have an interest in prosecuting criminal defendants for violating criminal statutes, such as MCL 750.224f, or at least in having the authority to prosecute. Thus, because the trial court's decision in this case to restore petitioner's gun rights directly affected petitioner's legal status under MCL 750.224f, respondent had an interest in the proceedings, and that interest conveyed standing on it. See *LSEA*, 487 Mich at 372; MCL 49.153 (establishing standing on the part of the prosecuting attorney in all cases in which "the state or county may be . . . interested.").

Respondent is an aggrieved party on appeal for these same reasons. Respondent argued that it opposed the petition because petitioner had not successfully completed the requirements of MCL 28.424. As explained earlier, when a petitioner's gun rights are restored he or she may lawfully possess a firearm. Thus, in this case, once the trial court restored petitioner's gun rights, respondent was precluded, under MCL 750.224f, from prosecuting petitioner for possessing a firearm. The trial court's determination conclusively resolved respondent's authority to enforce MCL 750.224f as to petitioner, now and in the future. Thus, respondent is an aggrieved party, as the trial court's ruling will be the only opportunity for respondent to seek to assert its authority regarding the restoration of petitioner's firearms rights. See *MCNA Ins Co*, 326 Mich App at 740; MCL 49.153.

### III. RESTORATION OF PETITIONER'S GUN RIGHTS

Turning to the merits of this case, we agree with respondent that the trial court erred by restoring petitioner's gun rights.

### A. STANDARD OF REVIEW

"Issues of statutory interpretation are reviewed de novo." *City of Riverview v Sibley Limestone*, 270 Mich App 627, 630; 716 NW2d 615 (2006). When the language of a statute is clear and unambiguous, this Court "will apply the statute as written and judicial construction is not permitted." *Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011).

---

[7] For purposes of this opinion, the phrase "possess firearms" means to possess, use, transport, sell, purchase, carry, ship, receive, or distribute firearms. See MCL 28.424(1).

B. ANALYSIS

MCL 28.424 establishes the mechanism by which an individual who is prohibited from possessing a firearm may have his or her rights to possess a firearm restored. In relevant part, MCL 28.424 states:

> (1) An individual who is prohibited from possessing, using, transporting, selling, purchasing, carrying, shipping, receiving, or distributing a firearm under section 224f(2) of the Michigan penal code, 1931 PA 328, MCL 750.224f, may petition the circuit court in the county in which he or she resides for restoration of those rights.
>
> * * *
>
> (4) The circuit court shall, by written order, restore the rights of an individual to possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm or to possess, use, transport, sell, carry, ship, or distribute ammunition if the circuit court determines, by clear and convincing evidence, that all of the following circumstances exist:
>
>> (a) The individual properly submitted a petition for restoration of those rights as provided under this section.
>>
>> (b) The expiration of 5 years after all of the following circumstances:
>>
>>> (*i*) The individual has paid all fines imposed for the violation resulting in the prohibition.
>>>
>>> (*ii*) The individual has served all terms of imprisonment imposed for the violation resulting in the prohibition.
>>>
>>> (*iii*) The individual has successfully completed all conditions of probation or parole imposed for the violation resulting in the prohibition.
>>
>> (c) The individual's record and reputation are such that the individual is not likely to act in a manner dangerous to the safety of other individuals.

The parties focus much of their arguments on MCL 28.424(4)(b)(*iii*), and whether petitioner successfully completed "all conditions of probation or parole imposed for the violation resulting in the prohibition." Generally, a defendant in a criminal proceeding will be sentenced to either probation or a term of imprisonment, not both, with only a term of imprisonment carrying with it with a possibility of parole.[8] Here, however, petitioner did receive both, albeit at different

---

[8] In discussing the meaning of "parole" under Michigan law, this Court in *People v Clark*, 315 Mich App 219, 230; 888 NW2d 309 (2016), stated:

times, because his original sentence was a term of probation and because, as a consequence of his violation of that probation, he was resentenced to a term of imprisonment, from which he was later paroled. In other words, petitioner's original sentence was one of probation, not incarceration; therefore, it necessarily included no element of possible future parole. Parole became a possibility only after petitioner violated his probation and was re-sentenced to a term of imprisonment.

We conclude that petitioner's parole is not relevant for purposes of MCL 28.424(4)(b)(*iii*) because, in the circumstances presented, the conditions of parole were not initially imposed "for the violation [of law] resulting in the prohibition." In this case, "the violation"[9] of law to which the statute refers means the violation of law that rendered petitioner ineligible to possess a firearm, that is, his conviction of arson. MCL 750.224(f)(1). Petitioner was sentenced to probation for that offense, and violated the terms of that probation; as a result, he was sentenced to a term of imprisonment for which he was eventually paroled. Only the probation, and not the later parole, involved conditions imposed directly "for the violation resulting in the prohibition," because only the term of probation was part of the original sentence for the arson offense; conditions of parole were imposed not as part of the original sentence for the underlying felony but only as a result of the violation of the terms of probation, and thus in the circumstances presented is not relevant under MCL 28.424(4). Therefore, we conclude under the circumstances of this case that the only relevant inquiry is whether petitioner complied with "all conditions of probation," not with whether he complied with conditions of parole.

We recognize that, generally, "parole is inherently a part of the original sentence imposed by the trial court." *People v Clark*, 315 Mich App 219; 888 NW2d 309 (2016). However, that was not true in this case. In this case, the original sentence was of probation; only upon the

---

[U]nder Michigan law, "parole" is consistent with the definition of that term in *Black's Law Dictionary* (10th ed.): "The conditional release of a prisoner from imprisonment before the full sentence has been served." It is also consistent with the first pertinent definition of "parole" in *Merriam–Webster's Collegiate Dictionary* (11th ed.) of "a conditional release of a prisoner serving an indeterminate or unexpired sentence." A prisoner becomes "*parole eligible*" after serving the minimum term of his or her indeterminate sentence, and the Parole Board then has jurisdiction to determine "whether the prisoner is *worthy* of parole." [*Id*. (emphasis in original).]

[9] It is potentially confusing that the statute uses the term "the violation" in defining the conditions which a petitioner must meet for restoration of firearms rights, because the term "violation" can, in isolation, refer to either a violation of law or a violation of the conditions of probation or parole. But it is clear from the context here that "the violation" refers to the underlying violation of law which results in an individual's losing firearm rights. MCL 28.424(1) refers to an individual being "prohibited" from possessing a firearm under MCL 750.224f. Under MCL 750.224f, "a person convicted of a felony shall not possess, use, transport, sell, purchase, carry, ship, receive or distribute a firearm in this state . . ." Thus, it is a felony conviction that triggers the loss of firearms rights and therefore constitutes "the violation" regarding those rights; in this case, that violation is petitioner's conviction of arson.

violation of that probation did a sentence of imprisonment result, which eventually led to petitioner's parole and related conditions of parole.

We further recognize that "a probation violation does 'not constitute a separate felony . . . .' " *People v Hendrick*, 472 Mich 555, 562; 697 NW2d 511 (2005), quoting *People v Kaczmarek*, 464 Mich 478, 482; 628 NW2d 484 (2001). "Rather, 'revocation of probation simply clears the way for resentencing on the original offense.' " *Id.* See also MCL 771.4 ("If a probation order is revoked, the court may sentence the probationer in the same manner and to the same penalty as the court might have done if the probation order had never been made.") However, although the imprisonment sentence (from which petitioner ultimately was paroled) technically was a sentence on the original arson offense, rather than for the probation violation, we cannot on these facts deem the conditions of parole to have been imposed for the arson offense itself, for purposes of MCL 28.424(4), given the intervening initial sentence of probation, probation violation, revocation of probation, and imprisonment.

For the same reason, we reject petitioner's contention that the requirement of MCL 28.424(4)(b)(*iii*)— that petitioner have "successfully completed all conditions of probation or parole imposed for the violation resulting in the prohibition"—means that petitioner can pick and choose between his satisfaction of the conditions of his probation or the conditions of his parole. To the contrary, we interpret the statutory language as reflecting the Legislature's understanding that a criminal sentencing generally results in *either* probation *or* imprisonment (with the possibility of parole), *not both*. It therefore included the language "conditions of his probation or parole" so as to *broadly* encompass *both* possibilities. It did not intend the language to give a petitioner the choice of complying with the terms of his original probation or of complying with the terms of his later parole, particularly because the parole is from a term of imprisonment that itself resulted from the violation of his probation.

Petitioner concedes that he did not complete probation, as his probation was violated and he was sentenced to prison. Consequently, petitioner is ineligible for restoration of his firearms rights. See MCL 28.424(4)(b)(*iii*). Finally, because MCL 28.424(4)(b)(*iii*) in and of itself precludes the restoration of petitioner's firearms rights, this Court need not consider whether petitioner also failed to satisfy other requirements for restoration of rights, such as whether he was required to pay restitution and attorney fees under MCL 28.424(4)(b)(*i*).

IV. CONCLUSION

Reversed and remanded for the trial court to enter an order denying the petition because petitioner has not carried his burden. We do not retain jurisdiction.

/s/ Jonathan Tukel
/s/ Mark T. Boonstra